JEFFREY T. NORBERG
(State Bar No. 215087)
AMBER RYE BRUMFIEL
(State Bar No. 215181)
NEAL & MCDEVITT LLC
2801 Lakeside Dr., Ste. 201
Bannockburn, IL 60015-1200
Telephone:   (847) 441-9100
Facsimile:    (847) 441-0911
jnorberg@nealmcdevitt.com
abrumfiel@nealmcdevitt.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATTY APOLLONIA KOTERO aka APOLLONIA, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> PAISLEY PARK ENTERPRISES LLC, a Delaware limited liability company, and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 2:25-cv-07769-AB-PVC <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> **Date: October 24, 2025** <br> **Time: 10:00 a.m.** <br> **Location: Courtroom 7B** |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  BACKGROUND ............................................................................................. 3

    A. TTAB Proceedings............................................................................... 3

    B.  There Is No Dispute Regarding the Use of Any Mark ....................... 6

    C.  Plaintiff's Surprise Complaint ......................................................... 10

III. ARGUMENT ................................................................................................ 11

    A.  Legal Standard ................................................................................. 11

    B.  The TTAB Proceedings Do Not Create a Justiciable Dispute.................... 13

    C.  The Court Should Decline to Entertain This Action................................. 16

IV.  CONCLUSION............................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*American Pioneer Tours, Inc. v. Suntrek Tours, Ltd.,* 1998 WL 60944 (S.D.N.Y. 1998)...........................................................................17

*Bobosky v. Adidas AG,* 2010 WL 4853295 (D. Or. 2010)................................11, 12

*Fidelity & Casualty Co. v. Reserve Insurance Co.,* 596 F.2d 914 (9th Cir. 1979)...12

*Government Employees Insurance Co. v. Dizol,* 133 F.3d 1220 (9th Cir. 1998).....16

*K-Lath, Division of Tree Island Wire (USA), Inc. v. Davis Wire Corp.,* 15 F.Supp.2d 952 (C.D. Cal. 1998)............................................2, 15

*L.A. Triumph, Inc. v. Ciccone,* 2011 WL 13217374 (C.D. Cal. 2011)....................11

*Medimmune, Inc. v. Genentech Inc.,* 549 U.S. 118 (2007)......................................12

*Monster Cable Products, Inc. v. Euroflex, s.r.l.,* 642 F.Supp. 2d 1001 (N.D. Cal. 2009) ........................................................................13, 15

*Nike, Inc. v. Already, LLC,* 663 F.3d 89 (2d Cir. 2011) ...........................................17

*Purely Driven Products, LLC v. Chillovino LLC*, 171 F.Supp.3d 1016 (C.D. Cal. 2016).........................................................3, 11, 12, 13

*Rhoades v. Avon Products, Inc.,* 504 F.3d 1151 (9th Cir. 2007)..............................16

*San Diego County Credit Union v. Citizens Equity First Credit Union,* 65 F.4th 1012 (9th Cir. 2023) ................................................................18

*Top Cola Co. v. Coca-Cola Co.,* 314 F.2d 124 (2d Cir. 1963)................................17

*V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC,* 946 F.3d 542 (9th Cir. 2019)..................................................................11, 14

## Statutes and Rules

15 U.S.C. §1067(a) ..................................................................................................14

28 U.S.C. §2201(a) ..................................................................................................12

## Miscellaneous

5 McCarthy on Trademarks and Unfair Competition 32:53 (5th ed.) ..........16, 17, 18

iii

## I.    INTRODUCTION

This is not a case about whether Plaintiff may continue using "Apollonia" as her stage name.  This case is exclusively about whether Plaintiff is entitled to two United States Trademark Registrations that she obtained during the chaotic period following the intestate death of Prince Rogers Nelson, singularly known as "Prince."  The registration issue has been litigated extensively in two separate cases for the last six years before the Trademark Trial and Appeal Board (TTAB).  Both cases had been tried to completion and were awaiting final decision by the TTAB when Plaintiff, apparently unhappy with her prospects before the TTAB, improperly filed this lawsuit under the Declaratory Relief Act.

The parties agreed more than 40 years ago that Plaintiff could use "Apollonia" as a stage name so long as it did not interfere with Defendant's use of APOLLONIA 6. Defendant has never asked Plaintiff to cease using that stage name, nor has Defendant ever threatened to sue Plaintiff.  However, Plaintiff's registration of APOLLONIA and APOLLONIA 6 are blocking Defendant's effort to register its own APOLLONIA 6 mark.  Plaintiff's APOLLONIA registration has already been cancelled by the Trademark Office, and the TTAB's decision on the APOLLONIA 6 mark is imminent.

The Declaratory Relief Act allows a plaintiff facing threats of actual harm to seek relief from the courts.  It is not intended to allow parties facing potentially adverse

1

administrative decisions to short-circuit the administrative process in favor of relitigating the same issue before a federal court.  In the context of trademark cases, disputes before the TTAB on their own do not provide a plaintiff with declaratory relief standing.  Rather, standing generally requires a showing that the defendant has threatened something more than just cancellation of a trademark registration.  The Defendant has never made any such threat here; the court, therefore, lacks subject matter jurisdiction, and dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate.

Plaintiff attempts to create jurisdiction in this court by hypothesizing what might or could happen one day, if one were to infer from the existence of the remaining TTAB proceeding that more litigation was forthcoming.  But she alleges no *facts*; she only speculates.  Plaintiff's subjective fear does not confer jurisdiction on this court.  ("[A] subjective apprehension is insufficient without objective substance." *K-Lath, Div. of Tree Island Wire (USA), Inc. v. Davis Wire Corp.*, 15 F. Supp. 2d 952, 962 (C.D. Cal. 1998).)  What Plaintiff characterizes as Defendant's "threats" are the TTAB proceedings that are on the verge of decision.  Her complaint states: "Defendants have *threatened* that Apollonia must comply with their demands including giving up her name and the trademark applications and registrations, *by initiating multiple actions before the TTAB*."  Complaint, ¶ 14, *emphasis added*.  But initiating a case before the TTAB does nothing more than ask the TTAB to decide the issue of registrability.  It also does not, on its own, create a justiciable case or controversy sufficient to confer standing for declaratory relief.

*Purely Driven Products, LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016, 1019 (C.D. Cal. 2016).  Defendant has not demanded that Kotero give up her name, nor has Defendant accused Plaintiff of infringement.  Plaintiff's case should therefore be dismissed for lack of subject matter jurisdiction.

## II.    BACKGROUND

### A. The TTAB Proceedings

This dispute stems from two administrative proceedings to cancel trademark registrations.  Plaintiff played the character "Apollonia" in the 1984 film "Purple Rain." Defendant PPE is Prince's successor-in-interest and the petitioner in both proceedings before the TTAB.  Declaration of L. Londell McMillan ("McMillan Decl."), ¶ 2.

Plaintiff did not use the name Apollonia before she was cast in "Purple Rain", *Id.*, ¶ 17 & Ex. 8 at 14:5-16:4.  Apollonia was a fictional character named by Prince for the film, and Apollonia 6 was the name of the singing group she fronted.  *Id.*, ¶¶ 6-7. Plaintiff adopted the Apollonia name as her stage name when she got the role in the film. *Id.*, ¶ 17 & Ex. 8 at 14:5-16:4.

In connection with the film, Plaintiff sang vocals in Apollonia 6, which was a musical group created by Prince.  *Id.* at 18:21-19:19.  On August 10, 1984, Plaintiff entered into a recording contract with Prince's company, PRN Music Corp. (the "PRN Contract").  *See* Complaint, Ex. A.  In the PRN Contract, Prince granted Plaintiff the right to use Apollonia as her professional name, subject to a number of restrictions,

including a restriction that she not use Apollonia "in connection with any device now or hereafter known embodying sound alone or sound synchronized with or accompanied by visual images or any other device whatsoever in such a way as may create public confusion with respect to our use of the name 'Apollonia 6'." Complaint, Ex. A at p. 3, §§ 7 (b)-(c).

Prince passed away suddenly on April 21, 2026, leaving no last will and testament. McMillan Decl., ¶ 3. Prince's intestacy made settling his estate complicated and difficult. *Id*. Identifying heirs and probate property was a lengthy and tedious undertaking. *Id*. Literally hundreds of people came forth, all claiming to be heirs entitled to a share in Prince's Estate (the "Estate"). *Id*. Only a very small few were judged to be legitimate. Among those who were illegitimate were people who attempted to grab for themselves property that belonged to Prince. *Id*. This was the case for a few of his trademarks. *Id*. Following his death, people lacking ownership interests in Prince's trademarks registered or applied to register marks that belonged to Prince. *Id*. These individuals never attempted such improper actions during Prince's lifetime. *Id*. In numerous instances, action was taken by the Prince Estate to reclaim the rights to such trademarks. *Id*.

Plaintiff applied to register two trademarks during this chaotic period following Prince's death: APOLLONIA and APOLLONIA 6. McMillan Decl., ¶4, Exs. 1-2.

In performing its duties to the Estate, the Personal Representative appointed to manage the Estate's interests, Comerica Bank and Trust N.A., took steps to secure as much of Prince's intellectual property as possible. McMillan Decl., ¶ 5. This included applying to register trademarks owned by Prince and his associated businesses. *Id*.

The Estate, via its representative, applied to register APOLLONIA 6, which was created, developed, and used by Prince or a Prince-owned entity (Application Serial No. 881405070). McMillan Decl., ¶ 9. The APOLLONIA 6 mark, however, was refused registration on the basis of likelihood of confusion with registrations for APOLLONIA (Registration No. 5626232) and APOLLONIA 6 (Registration No. 5272757), both owned by Plaintiff. *Id*.

The Estate attempted to overcome the refusal by arguing that there was no likelihood of confusion between its mark and Plaintiff's Registration for APOLLONIA. McMillan Decl., ¶ 10 & Ex. 3. The Estate also filed two petitions to cancel Plaintiff's Registrations – one on July 12, 2019 (for APOLLONIA 6) and one on October 26, 2021 (for APOLLONIA). Complaint, Ex. C. Consistent with the Estate's arguments before the PTO, neither of these petitions alleged a likelihood of confusion between Plaintiff's Registrations and any rights owned by the Estate. *Id*. Instead, the petitions were based on, among other things, an argument that Plaintiff had abandoned her marks. *Id*.

By order of the Probate Court on August 1, 2022, all assets of the Estate were distributed to each of PRINCE LEGACY, LLC and PRINCE OAT HOLDINGS LLC, the

members comprising Defendant PPE.  McMillan Decl., ¶ 11.  It was the intent of the Estate to distribute all assets, including all trademarks.  *Id.*  Accordingly, all trademarks owned by the Estate were distributed either to PPE, NPG Music Publishing, LLC, or NPG Records, LLC.  *Id.*  Some were transferred by operation of law with the transfer or acquisition of the businesses that owned them; others were transferred by written assignment.  *Id.*  This transfer included the Estate's application for APOLLONIA 6, which was transferred to Defendant PPE.  *Id.*  Shortly after the transfer, Defendant PPE was substituted for the Estate as Petitioner in the TTAB cancellation proceedings.  *Id.*

Following the substitution, PPE immediately began efforts to resolve the dispute between the parties.  McMillan Decl., ¶ 12.  Between September 2022 and August 2024, the parties repeatedly suspended proceedings before the TTAB to attempt to work out a settlement.  *Id.*  The parties held numerous calls, both among outside counsel and among the parties.  *Id.*  The parties exchanged proposed draft settlement agreements.  *Id.*

Notwithstanding these settlement efforts, the parties were unable to resolve their differences regarding the trademark registrations.  McMillan Decl., ¶ 14.  The APOLLONIA 6 case was tried to conclusion and awaiting decision by the TTAB when Plaintiff filed this Action.  *Id.*  The APOLLONIA case was suspended by the TTAB following the filing of both parties' main trial briefs because Plaintiff allowed her APOLLONIA registration to be cancelled before trial was complete.  *Id.*

**B.  There is No Dispute Regarding the Use of Any Mark**

Defendant has taken no action against Plaintiff apart from maintaining the TTAB proceedings initiated by prior counsel on behalf of Defendant's predecessor in interest. McMillan Decl., ¶ 15.  The sole conflict between the parties is that Plaintiff's registrations are blocking Defendant's application.  *Id*.  Plaintiff's 30(b)(6) deposition of L. Londell McMillan (Managing Member of Prince Legacy, LLC, one of the two members comprising Defendant, Paisley Park Enterprises, LLC) confirms the limitations of the conflict:

> Q.· ·Can you think of anything that offends the
>
> estate that Apollonia has done?· And by "estate" I mean
> the LLC.
>
> …
>
> · · · · ·THE WITNESS:· Let's start with the biggest.
>
> She has blocked and objected to Prince's successor
>
> company to register a Mark that he created, invested in
>
> and made valuable.· She has basically said to his legacy
>
> you can't trademark a name you created.
>
> BY MR. JOHNSON:
>
> · · Q.· ·Okay.· Other than the fact that there is this
>
> litigation, is there any specific act of hers that she
>
> has done that the LLC finds offensive?
>
> · · A.· ·I love Apollonia, so I'm not here to beat up on

7

what she has done.·

*Id.*, ¶ 15 & Ex. 7 at 47:24 – 48:25 (objection omitted).

The limitation of the conflict is further confirmed by Plaintiff's complaint, which alleges no acts by Defendant against Plaintiff other than the matters before the TTAB.

Defendant's conduct and course of dealing have been consistently devoid of threats or other interference with Plaintiff's business dealings and use of her stage name. McMillan Decl., ¶¶ 15-16.  In 2024, Defendant invited Plaintiff to appear and perform at Paisley Park using her adopted stage name, Apollonia.  *Id.*, ¶ 16.  Settlement discussions have consistently affirmed Plaintiff's continued use of her stage name.  *Id.,* ¶ 13.

Throughout their legal dispute, Defendant has maintained that Plaintiff's use of Apollonia as her stage name is distinguishable from (thus, not in conflict with) Defendant's trademark use of its APOLLONIA 6 mark.  McMillan Decl., ¶13.  Defendant stated this position publicly in the legal record of its APOLLONIA 6 application by way of its Office action response, and Defendant maintained this position in both TTAB proceedings.  Plaintiff's deposition of Mr. McMillan confirms that Defendant does not seek to prevent Plaintiff from continuing to use Apollonia as her stage name.

> She can use her name as her name and make
> money off of her name, the Apollonia name but I
> believe -- I believe the name was given to her by Prince

8

anyway but he -- he certainly contracted for her to be

able to use that name under those limited circumstances.

McMillan depo. p. 45, 6-10

Q.· ·Okay.· What about Apollonia, if she wanted to

put out sweat shirts with her name and picture on it

that just said Apollonia, is that offensive?· Let me ask

it another way.

· · · · ·Let's say that Apollonia wanted to put a sweat

shirt or a T-shirt with her name and image on it, does

she need permission from the LLC to do so?

…

· · · · ·THE WITNESS:· I do not believe so.

BY MR. JOHNSON:

· · Q.· ·Why?

· · A.· ·I believe she can use her name.

*Id.*, ¶ 15 & Ex. 7 at 50:7-20 (objection omitted).

Defendant has never asked Plaintiff to stop using her stage name, nor has

Defendant ever accused Plaintiff of infringement.  McMillan Decl., ¶ 16.  Nor are the

TTAB proceedings based on grounds that imply or suggest that a lawsuit for trademark

9

infringement might be forthcoming, as neither proceeding alleges likelihood of confusion.  Complaint, Ex. C.

### C. Plaintiff's Surprise Complaint

After six years of TTAB litigation, following the cancellation of Plaintiff's APOLLONIA registration, and on the eve of the TTAB's decision on the merits regarding Plaintiff's APOLLONIA 6 registration, Plaintiff filed this Complaint.  The sole count of the Complaint seeks declaratory relief that (1) Plaintiff owns rights in connection with APOLLONIA in connection with unspecified goods and services, and (2) Plaintiff has not infringed any valid, enforceable trademark rights of Defendants. Complaint ¶¶ 49-52.

The Complaint contains no facts to support Plaintiff's request for a declaration that she has not infringed any rights owned by Plaintiff.  Nowhere in the Complaint does Plaintiff claim that Defendant has asked her to stop doing anything, nor could she. Defendant has never done so.  *See* McMillan Decl., ¶¶ 13-16.  In Paragraph 4, Plaintiff speculates that Defendant may ask her to cease using her name at some point in the future, yet she provides no explanation for this belief.  Given that Defendant has never done so before, and, in fact, has offered Plaintiff opportunities to use her stage name, the speculation has no reasonable basis.

Paragraph 4 further demonstrates that Plaintiff misunderstands the nature of the proceedings at the TTAB: "Defendant's allegations and the actual litigation before the

TTAB threaten to disrupt not only Apollonia's livelihood but also her identity, including interfering with Apollonia's relationships with her industry partners." The TTAB has no authority to decide any of those things. *V.V.V. & Sons Edible Oils Limited v. Meenakshi Overseas, LLC*, 946 F.3d 542, 546 (9th Cir. 2019). Throughout most of the TTAB litigation, the only issue has been whether Plaintiff is entitled to keep her two registrations that are blocking Defendant's trademark application. Now that Plaintiff has allowed her APOLLONIA registration to be canceled, the only issue before the TTAB is whether Plaintiff may keep her registration for APOLLONIA 6. And that issue has been fully tried and is ready for decision.

As discussed in greater detail, below, none of this establishes an actual controversy under the Declaratory Relief Act.

## III.    ARGUMENT

### A. Legal Standard

Defendant seeks dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because there is no justiciable case or controversy for the Court to decide. A motion to dismiss for lack of jurisdiction may be facial or factual. In a facial attack, the movant alleges that the complaint itself lacks allegations sufficient to confer jurisdiction. In a factual attack, the court may consider evidence beyond the complaint: "[t]he Court, however, may consider evidence beyond the pleadings in reviewing a 12(b)(1) factual attack, such as here." *Purely Driven*

*Products, LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016, 1018 (C.D. Cal. 2016).  Also, the Court is not required to accept Plaintiff's allegations as true.  *See*, *Bobosky v. Adidas AG*, No. CV 10-630-PK, 2010 WL 4853295, @ *2 (D. Oregon, October 8, 2010); *L.A. Triumph, Inc. v. Ciccone*, No. CV 10-06195-SJO (JCx), 2011 WL13217374, @ *2 (C.D. Cal., February 16, 2011).  Under either form attack, "jurisdictional dismissals are warranted where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous."  *Bobosky*, 2010 WL 4853295, @ *2, (citations omitted).  In this case, Plaintiff's Complaint is both facially and factually insufficient.

"The Declaratory Judgment Act (the "Act") provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  (footnote 2: "The Declaratory Judgment Act 'does not itself confer federal subject matter jurisdiction'." *Fid. & Cas. Co. v. Reserve Ins. Co.,* 596 F.2d 914, 916 (9th Cir.1979).    The phrase "case or actual controversy" refers to "cases" and "controversies" that are justiciable under Article III.  *Medimmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007).  To demonstrate that a case or controversy exists, a declaratory judgment

12

plaintiff must prove that the facts alleged, 'under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (citations omitted).  The controversy must be" 'definite and concrete, touching the legal relations of parties having adverse legal interests," such that the dispute is "real and substantial" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.*

*Purely Driven Products, LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016, 1018-19 (C.D. Cal. 2016).

Merely defending an action at the TTAB, without an actual threat of liability for infringement is not enough.  *Purely Driven Products*, 171 F. Supp. 3d at 1019.  "Under Ninth Circuit trademark law, to satisfy the actual controversy requirement, the plaintiff must show 'real and reasonable apprehension' *that it would be liable for infringement* if it continued marketing its product."  *Monster Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010-11 (N.D. Cal. 2009) *emphasis added* (quoting *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982)).

**B. The TTAB Proceedings Do Not Create a Justiciable Dispute**

Plaintiff's claims facially fail because nothing in the Complaint suggests that there

is any dispute between the parties other than the two administrative proceedings pending before the TTAB.  As discussed above, the Plaintiff speculates that there might in the future be a dispute between the parties, but there are no facts alleged in the Complaint to support that speculation.

Plaintiff's allegation at paragraph 4 in the Complaint that the TTAB proceedings create a real and immediate controversy as to which party owns the name Apollonia and "who is entitled to provide goods and services under the name and use the name as a trademark" misconstrues the TTAB's jurisdiction.  "An interparty proceeding before the TTAB is a limited proceeding involving registration of a trademark. 15 U.S.C. § 1067(a) (TTAB "determine[s] and decide[s] the respective rights of [trademark] registration"). As the TTAB Manual of Procedure states, "[t]he Board is empowered to determine only the right to register." TBMP, § 102.01 (2019). Indeed, "[t]he Board is not authorized to determine the right to use, nor may it decide broader questions of infringement or unfair competition." *V.V.V. & Sons Edible Oils Limited v. Meenakshi Overseas, LLC*, 946 F.3d 542, 546 (9th Cir. 2019) citations omitted.  Thus, the TTAB does not decide whether a party may use a mark, how a party may use a mark, whether a party has committed trademark infringement, or whether a party is entitled to own or use a personal or professional name.  "An opposition is a proceeding in which the plaintiff seeks to *prevent the issuance of a registration*, in whole or in part, of a mark on the Principal Register. …A cancellation proceeding is a proceeding in which the plaintiff *seeks to cancel an*

14

*existing registration*, in whole or in part, of a trademark on the Principal Register or the Supplemental Register."  TBMP §102.02 (*emphasis added*).  The relief is limited to preventing registration or cancelling registration.  In opposition and cancellation proceedings, the Board is the guardian of the Principal Register, not the arbiter of trademark rights between parties.  Thus, transfer of a mark from the losing party to the prevailing party is not an available remedy in opposition or cancellation proceedings.  Moreover, the immediacy of the threat Plaintiff purports is questionable, since these matters have been ongoing since July 12, 2019 and Ms. Kotero has not seen fit to bring this action until the eve of the Board's decision.

Having failed to allege anything other than the existence of TTAB proceedings, the Complaint fails facially to allege an actual case or controversy.  *See Monster Cable Products,* 642 F. Supp. 2d, *supra* at 1010-11 (TTAB proceeding alone is insufficient to confer subject matter jurisdiction).

The Complaint also fails factually.  Defendant has submitted herewith a declaration establishing that Defendant has neither accused Plaintiff of trademark infringement, nor has it threatened any lawsuit.  Indeed, Defendant has even argued that there is no likelihood of confusion between its trademark and Plaintiff's stage name, and it has invited Plaintiff to appear and perform at an event as "Apollonia".  The only legal conflict between the parties was that two trademark registrations (now only one) that listed Plaintiff as owner were blocking Defendant's application to

15

register APOLLONIA 6.  That is why, until now, the dispute has been solely at the TTAB and not in federal district court.

### C. The Court Should Decline to Entertain this Action

Even if the Court were to find a justiciable case or controversy, the Court should decline to exercise jurisdiction in this case because the timing of Plaintiff's lawsuit suggests she is attempting to short circuit the administrative process before the TTAB. The Declaratory Judgment Act is "deliberately cast in terms of permissive, rather than mandatory authority." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (citation omitted).

As Professor McCarthy writes in his treatise:

[A] registrant whose mark is challenged for cancellation before the Trademark Board, cannot preempt or interrupt and stop the administrative process by filing suit for declaratory judgment in the federal courts solely based on a dispute as to the right to a registration. Where an administrative proceeding is already under way, the courts should not short-circuit the proceeding by litigating a suit for declaratory judgment unless there are independent grounds such as a threat of infringement litigation."

*Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 84 U.S.P.Q.2d 1409, 69 Fed. R. Serv. 3d 358 (9th Cir. 2007) (Notwithstanding pending opposition proceedings in the T.T.A.B., district court had declaratory judgment

16

jurisdiction because of threats of infringement litigation during settlement negotiations.). ... As the Second Circuit said: 'The Declaratory Judgment Act may not be used simply to remove a controversy from a forum where it properly belongs.' *Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 125, 136 U.S.P.Q. 610 (2d Cir. 1963) (Court should not use a declaratory judgment proceeding to remove to DJ court lawsuit Coca-Cola's challenge in its opposition to Topp-Cola's registration in Puerto Rico. "[T]he only controversy between the plaintiff and the defendant concerns the former's right to register its trademark in Puerto Rico."). Applied in: *American Pioneer Tours, Inc. v. Suntrek Tours, Ltd.*, 46 U.S.P.Q.2d 1779, 1998 WL 60944, *5 (S.D. N.Y. 1998) (Once an inter partes case is proceeding before the Trademark Board, the parties should not interrupt that proceeding. "The Declaratory Judgements Act may not be used simply to remove a controversy from a forum where it properly belongs.").  Similarly, the Lanham Act § 37 power in a court to rectify the trademark register will not justify such a case.  *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 98, 100 U.S.P.Q.2d 1621 (2d Cir. 2011), *aff'd*, 568 U.S. 85, 133 S. Ct. 721, 184 L. Ed. 2d 553, 105 U.S.P.Q.2d 1169 (2013) ("Section 1119 [Lanham Act § 37] therefore creates a remedy for trademark infringement rather than an independent basis for federal jurisdiction." A defendant sued for

infringement who was then given a covenant not to sue by the trademark owner could not support in federal court a declaratory judgment counterclaim to declare plaintiff's registration invalid. The court had no subject matter jurisdiction over the counterclaim.). ...

As the Ninth Circuit observed, allowing a case in the T.T.A.B. to create a basis for a declaratory judgment case in court 'would allow litigants to 'file suit in federal court solely for cancellation of a registration,' a result that 'undercut[s] and short-circuit[s] the power of the Trademark Board to consider such cases.'" *San Diego County Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1026 (9th Cir. 2023) (Quoting in part from treatise.)

5 McCarthy on Trademarks and Unfair Competition § 32:53 (5th ed.).  This case appears to be exactly what is described above: an attempt to preempt and short-circuit cancellation proceedings that are properly before the TTAB and on the verge of final decision.

The timing of Plaintiff's request for declaratory relief evidences Plaintiff's intent to circumvent the TTAB.  The parties have been litigating this matter at the TTAB since 2019, and both cancellation proceedings are on the verge of decision.  Trial has concluded in the APOLLONIA 6 proceeding and decision has been pending since July 24, 2025.  The APOLLONIA proceeding has constructively concluded, because the registration at issue was cancelled by the PTO due to Plaintiff's failure to file required

18

maintenance documents, and Defendant has requested that the proceeding be dismissed as moot.

The Court should not set aside the parties' six years of work before the TTAB. The Court should exercise its discretion to decline to hear this case.

## IV.    CONCLUSION

For the reasons enumerated above, Plaintiff's complaint fails to confer on this Court declaratory judgment jurisdiction, both facially and factually.   On its face, the complaint consists of accusations of hypothetical threats and attenuated conclusions born of faulty reasoning and a misunderstanding of the power of the TTAB.   Factually, the declaration of L. Londell McMillan establishes that Defendant has never threatened Plaintiff in a manner sufficient to confer standing under the Declaratory Relief Act. Plaintiff has failed to establish that there exists a case or controversy properly before this court.   Accordingly, Defendant respectfully requests that this case be dismissed.

DATED: September 17, 2025

/s/ Jeffrey T. Norberg

NEAL & MCDEVITT LLC
Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, Paisley Park Enterprises, LLC, certifies that this memorandum contains 4,301 words, which complies with the word limit of L.R. 11-6.1.

Date: September 17, 2025

By: /s/ Jeffrey T. Norberg