Daniel M. Cislo (SBN 125378)
dan@cislo.com
Katherine M. Bond (SBN 263020)
kbond@cislo.com
CISLO & THOMAS LLP
12100 Wilshire Blvd., Ste. 1700
Los Angeles, California 90025
Telephone: (310) 979-9190

Attorneys for Plaintiff
PATTY A. KOTERO aka APOLLONIA

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| PATTY APOLLONIA KOTERO aka APOLLONIA, an individual, | Case No. 2:25-cv-07769-AB-PVC |
|---|---|
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | 1. DECLARATORY RELIEF |
| PAISLEY PARK ENTERPRISES LLC, a Delaware limited liability company, and DOES 1-10, inclusive. | 2. RIGHT OF PUBLICITY CAL. CIV. CODE §3344 |
| Defendants. | **REQUEST FOR JURY TRIAL** |

Patty A. Kotero a.k.a. Apollonia through her attorneys Cislo & Thomas LLP, alleges as follows:

## INTRODUCTION

1.  In trademark law, it is an axiomatic truth that two different, separate, distinct, unrelated and unaffiliated parties cannot provide the same goods and services to the consuming public under the same trademark or tradename. Here, Defendants are not above the law, and they do not get to unilaterally decide to "share" a trademark that belongs to someone else.

2.  Plaintiff Patty Apollonia Kotero brings this action for declaratory relief seeking a judicial determination regarding the ownership of the name "APOLLONIA" and the trademarks associated therewith. Plaintiff further alleges that Defendants have violated her rights of publicity pursuant to Cal. Civ. Code §3344(a). As described herein, Defendants are attempting to steal the name and trademark APOLLONIA even though, for more than forty (40) years, Ms. Patty Apollonia Kotero - the actress, singer, songwriter, producer, and entertainer - has been known as "Apollonia." In fact, Prince himself consented to and encouraged Apollonia in her professional endeavors as "Apollonia". If ever the fundamental principles of fairness - waiver, acquiescence, and laches apply - they apply here.

3.  In 1984, Plaintiff famously starred as the character "Apollonia", Prince's love interest in the pop culture classic *Purple Rain.* She was an instant fan favorite known for her big hair, sultry style and musical talent. A few years later, Apollonia released her first self-titled album, "*Apollonia*" with Warner Brothers.  She continued to perform music and act under the name Apollonia and most recently launched a podcast called "Apollonia Studio 6." All of the goodwill associated with the name and trademark "Apollonia" for the past four (4) decades is attributable to Plaintiff. There is only one Apollonia, and Apollonia is the source of the goods and services provided under this name. Therefore, to protect her brand, Ms. Kotero owns several "Apollonia" trademark applications and registrations.

FIRST AMENDED COMPLAINT

4.  After more than four (4) decades of continuous, exclusive, open and notorious use, Defendants, Prince's alleged estate, have asserted that Ms. Kotero does not own the name and has embarked on an aggressive campaign before the United States Patent and Trademark Office ("USPTO") and Trademark Trial and Appeal Board ("TTAB"), attempting to cancel Apollonia's trademark registrations and block her applications based on the contention that she is not the rightful owner of the APOLLONIA trademark.

5.  It is before the TTAB that Defendant Paisley Park Enterprises, LLC ("PPE") revealed it true intentions stating in pertinent part, [PPE] "…simply desires to **perfect its rights in the Mark** that its predecessor-in-interest developed and that it wishes to continue to use in the future."  .[1]

6.  The truth is Defendants have violated Apollonia's rights of publicity and want to continue using her likeness without her consent and the right to use APOLLONIA as a trademark in connection with clothing and entertainment services. On information and belief, Defendants have already taken affirmative steps to use the mark APOLLONIA in commerce. The problem is Apollonia is presently providing, and has been providing the same goods and services for many years.

7.  Defendant PPE further revealed its true intentions before the TTAB when it cited *B&B Hardware v. Hargis Industries Inc.*, a Supreme Court case that holds TTAB decisions may result in issue preclusion, meaning a party can be prohibited from pursuing litigation on an issue that has already been tried before the TTAB. PPE states in pertinent part, "Because the Board has not yet issued its decision, it remains to be seen whether issue preclusion will bind the parties in any subsequent district court litigation. **However, under B & B Hardware, it very well might**." See *B&B Hardware, Inc. v. Hargis Industries Inc.*, 575 U.S. 138, 153-54 (2015) and 110

---

[1] 104 TTABVUE 30 (Cancellation No. 92071732)

FIRST AMENDED COMPLAINT

TTABVUE 3 (Cancellation No. 92071732).   The only party seeking to leverage a potentially unjust TTAB decision is Defendant PPE.

8.  Defendants' intentions uncovered in the TTAB actions have created a real and immediate controversy between Apollonia and Defendants as to whether Apollonia or Defendants own this name and who is entitled to provide goods and services under the name and use the name as a trademark.

9.  If Defendants succeed at the TTAB, it is highly likely Prince's estate will demand Apollonia cease using her name and, if not, bring a trademark infringement action against her. Defendant PPE cannot "*perfect*" its rights if a third party is using the same mark for the same goods and services and it is only a matter of time before there is confusion.

10. Defendants' allegations and the actual litigation before the TTAB threaten to disrupt not only Apollonia's livelihood but also her identity, including interfering with Apollonia's relationships with her industry partners. Plaintiff has a reasonable apprehension of being sued for infringement by Defendants if she continues using her marks.

11. Defendants do not own any trademark rights, and Apollonia is the rightful owner of the APOLLONIA trademarks. Therefore, there is a real, immediate, and justiciable controversy between the parties. A judicial declaration is necessary to determine the respective rights of the parties regarding the asserted APOLLONIA trademarks, and Ms. Kotero respectfully seeks a judicial declaration that she is entitled to her name and marks.

## **THE PARTIES**

12. Plaintiff Patty A. Kotero a.k.a. Apollonia is an individual and resident of Los Angeles County, having an address of 269 S. Beverly Drive, Ste. 292, Beverly Hills, California 90212.

13. Upon information and belief, Defendant Paisley Park Enterprises, LLC is a Delaware limited liability company having an address of 7801 Audubon Road,

FIRST AMENDED COMPLAINT

Chanhassen, Minnesota 55317 and purports to be the Estate of Prince Rogers Nelson by and through Comerica Bank & Trust, N.A., in its fiduciary capacity as the personal representative ("Paisley Park").

14. On information and belief, the Defendants sued herein as Does 1-10 are individuals and entities whose names and identities are currently unknown to Plaintiff and who are engaged in the acts described below.  Plaintiff will amend its complaint to identify these individuals or entities as soon as their identities become known.

15. Plaintiff is informed and believes and, based thereon, alleges that at all times relevant to this complaint, there existed a relationship between each of the Defendants in the nature of a joint venture, partnership, principal and agent, employer and employee, master and servant, aider and abettor, and principal and/or conspirator.  Each and every act of each of the Defendants was duly authorized or ratified by each of the other Defendants and carried out within the course and scope of such relationship.  Hereafter, Defendants Paisley Park and Does 1-10 shall be referred to collectively as "Defendants."

16. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants participated in and is in some manner responsible for the acts described in this Complaint and any damages resulting therefrom.

17. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants have acted in concert and participation with each other concerning the claims in this Complaint.

18. Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants was empowered to act as the agent, servant and/or employees of each other, and that all the acts alleged to have been done by each of them were authorized, approved and/or ratified by each of them.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over this matter under 28 U.S. §§ 1338, 2201

FIRST AMENDED COMPLAINT

and 2202 in that this is an action for a declaratory judgment regarding the rightful owner of APOLLONIA and the trademark registrations and applications associated with that mark. As the United States Court of Appeals for the Ninth Circuit recently held, "Permitting a district court to adjudicate trademark applications when an action already involves a registered mark advances the interest of resolving all registration disputes in a single action. "[W]here, as here, there is a potential infringement lawsuit, federal courts are particularly well-suited to handle the claims so that parties may quickly obtain a determination of their rights without accruing potential damages." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) Critically, by specifying that a court "may determine the right to registration," § 1119 grants courts discretion to address the trademark applications and registrations of a party to a suit already involving a registration." *BBK Tobacco & Foods LLP v. Central Agriculture Inc.*, 97 F.4th 668 (9th Cir. 2024); see also *Chesebrough-Pond's, Inc. v. Faberge, Inc.* 666 F.2d 393, 396 (9th Cir. 1982) and *San Diego County Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1026 (9th Cir. 2023).[2]

20.    This Court has specific personal jurisdiction over Defendants on the grounds that Defendants have consciously and purposefully directed their conduct and activities in this District as described herein, including Defendants' alleged predecessors-in-interest, PRN Music Group and Water Productions, Inc., who were both conducting business in this District and, according to Defendants, entered into at least two contracts with Plaintiff in this District regarding the Apollonia name. Apollonia is an individual that resides and conducts business in this District, and Defendants have threatened that Apollonia must comply with their demands

---

[2] *San Diego County Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1026 (9th Cir. 2023), holding jurisdiction was present at the pleading stage and stating in part, "The reasonable apprehension test is "oriented to the reasonable perceptions of the plaintiff, *Chesebrough,* 666 F.2d at 396, based on "all the circumstances" known to it. *Societe*, 655 F.2d at 942 (quoting *Maryland Cas.*, 312 U.S. at 273); *MedImmune,* 549 U.S. at 127 (same)."

FIRST AMENDED COMPLAINT

including giving up her name and the trademark applications and registrations, by initiating multiple actions before the TTAB. Thus, Defendants have purposefully directed their activity relating to this dispute at Apollonia in this District, and this action arises out of and directly relates to Defendants' contacts with Apollonia in this District.

21. In doing so, Defendants have established sufficient minimum contacts with the Central District of California such that Defendants are subject to specific personal jurisdiction in this action. The exercise of personal jurisdiction based on his directed threats and contacts does not offend traditional notions of fairness and substantial justice. See *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079 (9th Cir. 2023).

22. Venue is proper in this Court under 28 U.S.C. § 1391(d) in that a substantial part of the events giving rise to these claims occurred in this judicial district, as discussed above.

## **APOLLONIA**

23. In the 1980's Apollonia was working as a singer, model, and actress when she landed a lead role in *Purple Rain*. Postproduction, she embarked on a worldwide tour to promote the film and her hit song from the film, "Sex Shooter."

24. Apollonia and Prince became lifelong friends up until his untimely passing in 2016. Apollonia co-wrote the Bangles hit, "*Manic Monday*" with Prince, and she provided vocals on Prince's song, "*Take Me With You.*"

25. In 1985, she became a regular on the television series *Falcon Crest,* where she played Apollonia, the girlfriend of the character Lorenzo Llamas.

26. She launched a self-titled solo album, "*Apollonia,*" in 1988 with Warner Bros., which featured several hit singles and appeared in a variety of television shows throughout the 90's and early 2000's.

27. In 2009, she launched a successful podcast which she still hosts today, called "APOLLONIA STUDIO 6" with her business partner that has featured

FIRST AMENDED COMPLAINT

numerous famous guests like Jo Koy and Tia Carrere. The Apollonia Studio 6 podcast is a source of income for Plaintiff.



28.    For all of these years neither Prince himself nor anyone on Prince's behalf demanded that Apollonia cease using the name Apollonia or contended that the name did not belong to her either personally or professionally.

29.    Apollonia owns and operates the website https://www.apolloniakotero.com/ where her fans can learn more about Apollonia and listen to the podcast.



30.    At the Apollonia store (https://apolloniakotero.store/) fans can buy Apollonia themed merchandise.

FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7



8    31.    Apollonia's music can be listened to and downloaded on Apple
9    Music and Spotify.

10
11
12
13
14
15
16

17    32.    It is no secret that the ownership and control of Prince's estate has been
18    extensively litigated. To protect herself and her livelihood, Apollonia filed trademark
19    applications, *pro se*.

20    33.    On or about October 3, 2016, Apollonia filed U.S. Trademark
21    Application Serial No. 87190761 for the mark APOLLONIA 6 for use in connection
22    with entertainment services, having a first use in commerce date in 1984, which
23    issued as U.S. Registration No. 5,272,757 on August 22, 2017 (the "'757
24    Registration").

25    34.    On or about April 4, 2018, Apollonia filed U.S. Application Serial No.
26    87862156 for the mark APOLLONIA for use in connection with entertainment
27    services with a first use in commerce date of January 1, 1984, and the application
28    issued as U.S. Registration No. 5,626,232 on December 11, 2018 (the "'232

FIRST AMENDED COMPLAINT

Registration").

35.    Apollonia has since filed two additional trademark applications:

| Application No. | Mark | Goods/Services |
|---|---|---|
| 97147611 | APOLLONIA STUDIO 6 | Audio Production Services |
| 99289792 | APOLLONIA | Entertainment Services |

Collectively, Apollonia's longstanding common law rights, the mark in the '757 Registration, the '232 Registration, and marks in the table above are referred to as the APOLLONIA Marks.

36.    For more than forty (40) years and until the present, Apollonia has openly and continuously used the name to identify not only herself but also her work, and the APOLLONIA name distinguishes her goods and services from goods and services made and sold by others by, among other things, prominently displaying the mark on her music, acting credits, on her Internet websites, streaming platforms and on advertising materials promoting Apollonia.





37.    The core function for trademarks is to identify the source of goods and services for consumers and here, the public identifies goods and services under the APOLLONIA with Plaintiff.  Apollonia is not just a stage name but Plaintiff's trademark.

FIRST AMENDED COMPLAINT

38. The presence of the APOLLONIA on Apollonia's goods and services indicates to the industry and the public that goods and services provided under the APOLLONIA Marks originate with, or are provided by, Apollonia. Due to Apollonia's hard work, dedication, and significant accomplishments, the APOLLONIA Marks have attained considerable value, and the goodwill associated with them is a valuable business asset, as the consuming public associates the APOLLONIA Marks with Patty Apollonia Kotero.

## **DEFENDANTS' THREATENING AGGRESSIVE ACTS**

39. Defendant Paisley Park claims that, "Except for a handful of intellectual property assets unrelated to [the TTAB] matter, [Defendant] owns all intellectual property rights and all rights in the name and likeness of Prince." On information and belief, and now that Prince is deceased, Defendant will not stop in its efforts to acquire all things related to Prince even though it has no legal right to do so, and for many years Prince himself did not act to obtain such "things."

40. On January 4, 2017, the Personal Representative of the Estate of Prince filed an Inventory of the real and personal property of Prince's estate, in the matter of Estate of Prince Rogers Nelson, First Judicial District, District Court, Probate Division, State of Minnesota, County of Carver, Court File No. 10-PR-16-46 (the "Estate Inventory"). *See* 40 TTABVUE 26-75; 48 TTABVUE 73-120 (Exh. 8). Specifically, Exhibit 1 to the Estate Inventory, entitled "Summary of Trademark Prosecution Matters" lists 39 marks related to Prince, including "Vanity 6." *See* 40

FIRST AMENDED COMPLAINT

TTABVUE 41-53; 48 TTABVUE 86-98. Notably, Exhibit 1 does not list the APOLLONIA or the APOLLONIA 6 mark. *See* id.

41.    According to the USPTO records, on October 5, 2018, Defendant PPE filed U.S. Trademark Application Serial No. 88145070 for the mark APOLLONIA 6 for use in connection with "musical sound recordings; musical video recordings; audio and video recordings featuring music performances; downloadable digital audio and video files featuring musical performances; motion picture films featuring music and musical entertainment," claiming a first in commerce date of October 1, 1984 (the "'070 Application").

42.    In an Office Action dated January 15, 2019, the '070 Application was refused registration due to a likelihood of confusion with the '757 Registration and '232 Registration owned by Plaintiff Apollonia.  The Office Action additionally refused registration because the specimen provided identified a person or a performer and did not function as a trademark.  In response, counsel for Defendant PPE argued that Ms. Kotero had consented to Applicant's use of the mark via a prior agreement and that there was no likelihood of confusion.

43.    There is no agreement or any trademark co-existence or consent agreement between Plaintiff and Defendant PPE regarding the use or registration of APOLLONIA.

44.    On information and belief, in the Office Action response, Defendant PPE was referring to agreements Plaintiff allegedly entered into with PPE's alleged predecessors-in-interest regarding the APOLLONIA name.

45.    Despite arguing to the Trademark Office on July 12, 2019, "Obviously, based on this language [in the agreements], the parties agreed that the APOLLONIA Mark and the applied-for APOLLONIA 6 mark could co-exist in the marketplace without confusion…," PPE filed a Petition to Cancel the '757 Registration with the TTAB, Cancellation Proceeding No. 92071732 (the "First Cancellation Action"). The prosecution of the '070 Application is presently suspended until the disposition

FIRST AMENDED COMPLAINT

of the TTAB action.

46.    On October 26, 2021, and more than two (2) years later, Defendant PPE initiated a second Cancellation Proceeding before the TTAB, Cancellation Proceeding No. 92078316, in an effort to cancel the '232 Registration on the basis that Apollonia is not the rightful owner of the trademark, Apollonia does not function as a trademark, and abandonment (the "Second Cancellation Proceeding").  Both the First and Second Cancellation Proceedings remain pending before the TTAB and are collectively referred to as the "TTAB Proceedings."

47.    Most recently, on June 20, 2025, Defendant PPE filed intent-to-use U.S. Trademark Application Serial No. 99245126 for the mark APOLLONIA for use in connection with clothing and entertainment services (the "'126 Application"). The '126 Application has not yet been examined by the U.S.P.T.O.

48.    Intent-to-use trademark applications require a *bona fide* intent to use the applied-for mark in commerce. 15 U.S.C. § 1051(a)(1), (b)(1). This is more than a reservation of rights.  Affirmative steps must be taken by a trademark applicant in order to satisfy this legal requirement at the time the application is filed. This means two things as of June 20, 2025: (1) Defendant PPE had taken affirmative steps to use the mark APOLLONIA as a trademark for entertainment services; and, (2) Defendant PPE had taken affirmative steps to use APOLLONIA as a trademark for clothing.

49.    If Defendant PPE does not have the legally required *bona fide* intent to use APOLLONIA in commerce as a trademark, the '126 Application is *void ab initio* and should be abandoned.

50.    In the First Cancellation Proceeding, Defendant Paisley Park contended that on August 10, 1984, Plaintiff entered into an agreement with PRN Music Corp., a company owned and operated by Prince and the predecessor-in-interest to Defendant Paisley Park (the "PRN Agreement"). *See* 1 TTABVUE 2-3, Exhibit A.

51.    The PRN Agreement lists an address in Beverly Hills for the Fred

FIRST AMENDED COMPLAINT

Moultrie Accountancy Corp. for PRN.  Attached as **Exhibit "A"** is a true and correct copy of the PRN Agreement supplied by Defendant Paisley Park in the First TTAB Proceeding.

52.    In the Second TTAB Proceeding, Defendant Paisley Park asserts that Plaintiff entered into another agreement on October 28, 1983, with Water Productions, Inc., a California corporation and the agent of whom was Charter Management, located in Los Angeles, California. Defendant alleges that "Prince was the sole owner of Water Productions, Inc." and "The Estate is the successor in interest to Prince as the owner of Water Productions and has the lawful right to exercise the rights of Water Productions…., including owning the right to use APOLLONIA with the movie *Purple Rain* and the performances contained in the movie."  See 1 TTABVUE 3-4, Exhibit B.  Attached as **Exhibit "B"** is a true and correct copy of the Water Productions, Inc. agreement ("Water Productions Agreement") as provided by Defendant Paisley Park in the Second TTAB Proceeding.

53.    In each Cancellation Proceeding, Defendant Paisley Park essentially contends that Apollonia waived all her rights in and to the APOLLONIA name via the PRN and Water Productions Agreements or, to put it another way, that Defendant Paisley Park as an alleged predecessor-in-interest to these two companies, has retained all rights in and to the APOLLONIA name and is the rightful owner of the APOLLONIA trademarks. Attached as **Exhibit "C"** are true and correct copies of the Petitions for Cancellation, without the exhibits, filed by Defendant Paisley Park.

54. On information and belief, neither Water Productions nor PRN Music is a predecessor-in-interest to Defendants including Defendant PPE. In fact, there are no documents that demonstrate the chain of title from Water Productions or PRN Music to Defendant PPE nor are there any documents to evidence the transfer and/or assignment of assets from Water Productions or PRN Music to PPE.  Defendants have no authority or consent to use Plaintiff's name, image, likeness or other indicia

FIRST AMENDED COMPLAINT

of personal identity.

55. Even assuming arguendo that Plaintiff signed any agreement decades ago, the statute of limitations for breach of contract expired long ago, and neither Prince nor anyone on his behalf ever requested Apollonia cease using her name or demanded she stop using her name on a personal or professional level. Contrary to Defendants' claims before the TTAB, Prince and Apollonia were friends, and he wanted her to be successful as Apollonia.

56. During the pendency of the Second Cancellation Proceeding, there was an inadvertent mistake. The required renewal documents were not timely filed to renew Plaintiff's '232 Registration.  As a result, Plaintiff's APOLLONIA registration was cancelled by the Trademark Office.  Plaintiff never intended to have her '232 Registration cancelled.

57. On or about September 10, 2025, Defendant PPE filed a document in the Second Cancellation Proceeding requesting the Petition to Cancel be dismissed "without prejudice".  If Defendant PPE has its way, there will be no decision from the TTAB regarding Plaintiff's use and ownership of the APOLLONIA trademark.

58.  Despite abandoning the APOLLONIA TTAB proceeding, Defendant PPE is still seeking a decision in the First Cancellation Action regarding APOLLONIA 6. The TTAB can potentially issue a decision based on a formality or technicality that occurred during the prosecution or maintenance of a trademark application or registration.  Sometimes applicant's, especially *pro se* applicant's make mistakes. As stated above, a decision that is adverse to Plaintiff regarding the use or lack thereof of APOLLONIA 6 can have significant consequences relating to Plaintiff's other pending APOLLONIA comprising trademark applications, her common law trademark rights, and her ability to provide goods and services under the APOLLONIA mark.

59. An adverse decision in the TTAB Proceedings emboldened by *B&B Hardware* could potentially be extremely harmful to Plaintiff Apollonia. For her

- 14 -

FIRST AMENDED COMPLAINT

entire adult life and professional career, she has been known by APOLLONIA by the public, her peers, friends, and family.

60. Moreover, the parties continue to file APOLLONIA comprising trademark applications and these one-off disputes before the U.S.P.T.O. and TTAB can continue for years, costing all parties significant time and expense. A judicial determination of the parties' actual rights in and to the APOLLONIA name and mark can once and for all end this dispute.

61. On information and belief, Defendants initiated the TTAB actions not only to "***perfect its right in the Mark***" but also because on October 16, 2025, *Purple Rain* will be released as a Broadway musical. On further information and belief, the musical is being brought to the stage at least partially by the NorthStar Group whose Chairman is L. Londell McMillan, who is also the managing member of Prince Legacy, LLC, which is a member of Defendant PPE. See https://hennepinarts.org/press/purple-rain-to-receive-world-premiere-in-princes-hometown-minneapolis-in and https://www.broadwaynews.com/purple-rain-musical-in-development/.

62. On further information and belief, Defendant PPE, without Plaintiff's consent, has entered into at least one agreement regarding the use of APOLLONIA and APOLLONIA 6 in connection with the *Purple Rain* musical wherein Plaintiff's rights of publicity have been violated. Defendants do not have the authority to allow a third party to use Plaintiff's name, image, voice, likeness or other indicia of identity including Plaintiff's likeness from the original film.

FIRST AMENDED COMPLAINT

63. On still further information and belief, Defendant PPE has entered into at least one agreement where Plaintiff's trademark rights will be violated. Plaintiff will amend its complaint to add claims of trademark infringement.

64. By reason of Defendants' acts, as alleged herein, there is an actual, justiciable, substantial, and immediate controversy between Apollonia, on the one hand, and Defendants, on the other, regarding whether Ms. Kotero has breached any agreement; or that the APOLLONIA name and trademark belong to Plaintiff; and Ms. Kotero does not violate any trademark rights owned by Defendants. Plaintiff seeks this Court's intervention as she has a reasonable apprehension of being sued for infringement by Defendants if she continues using her marks.

## **CLAIM FOR RELIEF**

## **COUNT 1**

### (Declaration of Rights – APOLLONIA)

65. Plaintiff repeats and re-alleges paragraphs 1 through 64 as though fully set forth in this paragraph.

66. There is presently a dispute between Plaintiff and Defendants regarding the parties' rights in and to the mark APOLLONIA and the trademark applications and registrations relating thereto.

67. The Defendant, on the one hand, contends that Plaintiff cannot use or register marks comprising APOLLONIA including "…in such a way as may create public confusion with respect to PRN Music's use of the name "Apollonia 6."

68. Plaintiff, on the other hand, contends that the APOLLONIA name and APOLLONIA Marks belong to her because:

    a. "Apollonia" as portrayed in the film *Purple Rain* was the name of a character or performer and did not function as a trademark; *see* Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§1051-1052, 1127; *see In re Polar Music Int'l AB*, 714 F.2d 1567, 1572, 221 USPQ 315, 318 (Fed. Cir. 1983);

b.  The statute of limitations for breach of contract for a written contract in the State of California is four (4) years. Even considering the facts in a light most favorable to Defendants, and Plaintiff entered into a valid, enforceable contract wherein Defendants retained and/or owned all rights in and to the name, likeness, and mark APOLLONIA, Defendants never enforced their alleged rights and the statute of limitations expired long ago; *see* Section 337 of the California Code of Civil Procedure;

c.  The equitable doctrine of waiver applies as Defendants intentionally relinquished any rights inducing Plaintiff's reasonable belief that such rights had been relinquished." See *United States v. King Features Entm't, Inc*., 843 F.2d 394, 399 (9th Cir. 1988);

d.  The equitable doctrine of acquiescence applies because Defendants' predecessor-in-interest provided consent; and the delay between this consent and the present is not excusable and the delay would cause the Plaintiff undue prejudice. See *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.,* 621 F.3d 981, 986 (9th Cir. 2010):

e.  Laches applies, as the Defendants' unreasonable and undue delay in enforcing any rights in and to the APOLLONIA name and mark and any belated enforcement would prejudice Plaintiff resulting in serious harm and disadvantage to her. See *Pinkette Clothing, Inc. v. Cosmetic Warriors Limited*, 894 F.3d 1015 (9th Cir. 2018).

69.  For all of the foregoing reasons, among others, Plaintiff contends that her use and registration of APOLLONIA in connection with entertainment services and/or related goods and services does not infringe any valid, enforceable trademark rights of Defendants, and she is the rightful owner of the APOLLONIA Marks.

70.  Based upon the foregoing, pursuant to 28 U.S.C. §§ 2201 and 2202,

Plaintiff is entitled to a judicial declaration.

## COUNT 2

(Violation of Rights of Publicity)

71. Plaintiff repeats and re-alleges paragraphs 1 through 64 and 66 through 70 as though fully set forth in this paragraph

72. California's Right of Publicity Statute, California Civil Code § 3344, protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

73. Pursuant to California Civil Code § 3344, it is unlawful for any person to knowingly use "another's name, voice, signature, photograph, or likeness, in any manner … without such person's prior consent …."

74. On information and belief, Defendants knowingly used Plaintiff's name, Photograph, likeness or other identifying indicia for commercial gain or otherwise.

75. The use of Plaintiff's likeness by Defendants did not have any connection with any news, public affairs, sports broadcast or account, or any political campaign.

76. Defendants' actions were a substantial factor in Plaintiff's harm.

77. Plaintiff therefore seeks injunctive relief and other such preliminary and other equitable or declaratory relief as may be appropriate.

78. Plaintiff also seeks a remedy as provided under the statute: Any person who violates this section shall be liable to the injured party or parties "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1.       That the Court declare that Plaintiff has not, does not, and will not infringe any valid, protectable trademark rights of Defendants;

---

FIRST AMENDED COMPLAINT

2.      That the Court declare the PRN Agreement and Water Productions Agreement null and void;

3.      That the Court declares that Defendant's objections and/or oppositions to Plaintiff's use and/or registration of the APOLLONIA Marks in connection with Plaintiff's goods and services are unfounded, and Defendants are prohibited from challenging the '757 Registration, '232 Registration, or Plaintiff's pending trademark applications or any registrations issuing therefrom before the Trademark Trial and Appeal Board;

4.      For an injunction ordering Defendant not to interfere with Plaintiff's use, promotion, and marketing of her goods and/or services offered under the APOLLONIA Marks;

5.      For an order cancelling U.S. Trademark Application Serial No. 88145070 and U.S. Trademark Application Serial No. 99245126 and prohibiting Defendants from filing any future trademark applications for APOLLONIA comprising trademarks, see *BBK Tobacco & Foods LLP v. Central Coast Agriculture, Inc.*, 97 F.4th 668, 670 (9th Cir. 2024);

6.      For a monetary award in favor of Plaintiff in an amount equal to (i) Plaintiff's actual damages and (ii) to the extent not included in actual damages, the Defendants' profits arising from the acts alleged above;

6.      For an award of costs as provided by law; and

7.      For such other and further relief as the court deems just and proper.

DATED:  October 3, 2025                 Respectfully submitted,

                                        CISLO &THOMAS LLP

                        By:  /s/Daniel M. Cislo_____

                                        Daniel M. Cislo

                                        Attorneys for Plaintiff,
                                        PATTY APOLLONIA KOTERO

- 19 -

FIRST AMENDED COMPLAINT

1

**REQUEST FOR JURY TRIAL**

2          Plaintiff Patty Apollonia Kotero respectfully requests a trial by jury of all

3    which may properly be tried to a jury.

4

5    Dated: October 3, 2025                       Respectfully submitted,

6                                           CISLO &THOMAS LLP

7                                           By:  /s/Daniel M. Cislo

8                                         Daniel M. Cislo

9                                         Attorneys for Plaintiff,

10                                         PATTY APOLLONIA KOTERO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2025, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Central District of California, using the electronic case filing system of the court.

On October 3, 2025, I caused a copy of the attached document to be served via First Class Mail to the addressee(s) shown below:

Jeffrey Norberg, Esq.
Neal & McDevitt, LLC
2801 Lakeside Drive, Suite 201

Bannockburn, IL 60015

jnorberg@nealmcdevitt.com

☒    **FEDERAL**:  I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on October 3, 2025, at Costa Mesa, California.


/s/Stephanie Navarro
Stephanie Navarro

FIRST AMENDED COMPLAINT