JEFFREY T. NORBERG
(State Bar No. 215087)
AMBER RYE BRUMFIEL
(State Bar No. 215181)
NEAL & MCDEVITT LLC
2801 Lakeside Dr., Ste. 201
Bannockburn, IL 60015-1200
Telephone:    (847) 441-9100
Facsimile:    (847) 441-0911
jnorberg@nealmcdevitt.com
abrumfiel@nealmcdevitt.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PATTY APOLLONIA KOTERO aka APOLLONIA, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> PAISLEY PARK ENTERPRISES LLC, a Delaware limited liability company, and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: 2:25-cv-07769-AB-PVC <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** <br><br> **Date: December 5, 2025** <br> **Time: 10:00 a.m.** <br> **Location: Courtroom 7B** |

0

MEMORANDUM OF POINTS AND AUTHORITIES

## Table of Contents

I.	INTRODUCTION....................................................................................3

II.	BACKGROUND ....................................................................................5

A.	The TTAB Proceedings Underlying Plaintiff's Declaratory Relief Claim .............5

B.	Plaintiff's Surprise Complaint ...........................................................9

C.	Plaintiff's Claim under Cal. Civ. Code § 3344......................................9

II.	ARGUMENT.......................................................................................11

A.	Plaintiff's Declaratory Relief Claim Should be Dismissed for Lack of Subject Matter Jurisdiction ...................................................................................11

i.	Legal Standard ....................................................................................12

iii.	The Amended Complaint Fails Factually..........................................14

iv.	The Court Should Decline to Entertain this Action ...........................16

B.	Plaintiff's Claim Under Cal. Civ. Code § 3344 Should Be Dismissed because it Fails to Plausibly Allege Use of Plaintiff's Identity.......................................18

III.	Legal Standard ...................................................................................19

IV.	Plaintiff has Failed to Plead that Defendant Used Her Identity .........................20

V.	A Claim that Plaintiff Owns the Character "Apollonia" would be Preempted by the Copyright Act...........................................................................................23

VI.	CONCLUSION...................................................................................24

1

MEMORANDUM OF POINTS AND AUTHORITIES

**Table of Authorities**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).................................................19

*Bobosky v. Adidas AG*, No. CV 10-630-PK, 2010 WL 4853295, @ *2 (D. Oregon, October 8, 2010) ....................................................................................................12, 24

California Civil Code § 3344 ................................................................................passim

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982) .........13

*Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) .....................20

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ...............................................................19

Fed. R. Civ. P. 12(b)(6)................................................................................................19

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 803 (N.D. Cal. 2011) ................19, 20

*Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) .........................17

*In re Polar Music Int'l* AB, 714 F.2d 1567, 1572 (Fed. Cir. 1983) ............................21

*Laws v. Sonty Music Entm't, Inc.*, 448 F.3d 1134, 1142 (9th Cir. 2006) ....................23

*Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017)................................23

*Monster Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010-11 (N.D. Cal. 2009) ................................................................................................................13

*Newton v. Thomason*, 22 F.3d 1455, 1458 (9th Cir. 1994)...................................21, 22

*Purely Driven Products*, 171 F. Supp. 3d at 1019................................................12, 13

*Rickley v. County of Los Angeles*, Case No. CV 16-04176-AB (AFMx), 2018 WL 11357527, at *3 (C.D. Cal., February 1, 2018) ........................................................19

*San Diego County Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1026 (9th Cir. 2023) ................................................................................................17

*See Monster Cable Products,* 642 F. Supp. 2d at 1010-11 .........................................14

*Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 125, (2d Cir. 1963) .......................17

*Triumph, Inc. v. Ciccone*, No. CV 10-06195-SJO (JCx), 2011 WL13217374, @ *2 (C.D. Cal., February 16, 2011)................................................................................12

2

## I. INTRODUCTION

Plaintiff's second attempt at pleading a declaratory relief claim fails to identify an actual case or controversy for the Court's consideration.  Indeed, the additions to the Amended Complaint confirm what this case is about: Plaintiff fears the possible effects (preclusive or otherwise) of a loss at the TTAB after six years of work, and she wants this Court to re-do that work and substitute its judgment for that of the TTAB. The Court should not allow this.  The Amended Complaint confirms that the only dispute between the parties remains whether Plaintiff's trademark registrations for APOLLONIA and APOLLONIA 6 should be canceled, which would allow Defendant's application for APOLLONIA 6 to proceed to registration.  The Amended Complaint discloses for the first time that Plaintiff allowed one of her registrations to be cancelled (APOLLONIA) leaving only the APOLLONIA 6 registration in the way of Defendant's attempt to register the APOLLONIA 6 mark.

Defendant has never threatened to sue Plaintiff, never asked her to cease using her adopted stage name, nor ever asked her to cease any of her business activities. The Declaratory Relief Act allows a plaintiff facing actual threats from a defendant to seek relief from the courts.  It is not intended to allow parties facing potentially adverse administrative decisions to short-circuit the administrative process in favor of relitigating the same issue before a federal court.  In the context of trademark cases,

MEMORANDUM OF POINTS AND AUTHORITIES

disputes before the TTAB on their own do not provide a plaintiff with declaratory relief standing.  Rather, standing generally requires a showing that the defendant has threatened something more than just cancellation of a trademark registration.  The Defendant has never made any such threat here, and Plaintiff has not alleged facts that would support such a finding.  Instead, she offers speculation as to what might or could happen one day, asking the court to infer from the existence of the TTAB proceedings that infringement litigation is forthcoming.  She alleges no *facts*; she only speculates.  Hypotheses and attenuated inferences are not the standard, but that is all she offers.  The court, therefore, lacks subject matter jurisdiction, and dismissal under Fed. R. Civ. P. 12(b)(1) is appropriate.

The Amended Complaint adds a claim for misappropriation of identity under California Civil Code § 3344, but there are no facts to support any plausible theory that Defendant is liable.  The Amended Complaint contains no allegation that Defendant has used Plaintiff's identity, but instead contains a single allegation that Defendant used Plaintiff's name under a photograph of another actress in an advertisement for an upcoming *Purple Rain* musical.  To state a plausible claim under California Civil Code § 3344, Plaintiff must allege at a very minimum that Defendant has used her identity.  Plaintiff has only alleged that Defendant has used the name of a character from *Purple Rain*, a film in which Plaintiff previously appeared.  Count 2 should therefore be dismissed under Rule 12(b)(6) for failure to state a claim.

## II.   BACKGROUND

### A. The TTAB Proceedings Underlying Plaintiff's Declaratory Relief Claim

The dispute between the parties related to Plaintiff's claim for declaratory relief stems from two administrative proceedings to cancel trademark registrations. Defendant PPE is Prince's successor-in-interest and the petitioner in both proceedings before the TTAB.  Declaration of L. Londell McMillan ("McMillan Decl."), ¶ 2.[1]

Plaintiff played the fictitious character "Apollonia" in the 1984 film "Purple Rain."  Plaintiff did not use the name Apollonia before she was cast in "Purple Rain", *Id.*, ¶ 17 & Ex. 8 at 14:5-16:4.  Apollonia was a fictional character named by Prince for the film, and Apollonia 6 was the name of the singing group she fronted in the film and which was created by Prince.  *Id.*, ¶¶ 6-7.  Plaintiff adopted the Apollonia name as her stage name after she got the role in the film.  *Id.*, ¶ 17 & Ex. 8 at 14:5-16:4.

On August 10, 1984, Plaintiff entered into a recording contract with Prince's company, PRN Music Corp. (the "PRN Contract").  *See* Amended Complaint ("AC"), Ex. A.  In the PRN Contract, Prince granted Plaintiff the right to use Apollonia as her professional name, subject to a number of restrictions, including a restriction that she not use Apollonia "in connection with any device now or hereafter known embodying sound alone or sound synchronized with or accompanied by visual images or any

---

[1]  The Court may consider evidence outside of the complaint in considering a motion under Fed. R. Civ. P. 12(b)(1).  *See* Section III A (i), below.

5

other device whatsoever in such a way as may create public confusion with respect to our use of the name 'Apollonia 6'."  AC, Ex. A at p. 3, §§ 7 (b)-(c).

Prince passed away suddenly on April 21, 2016, leaving no last will and testament.  McMillan Decl., ¶ 3.  Prince's intestacy made settling his estate complicated and difficult.  *Id.*  Identifying heirs and probate property was a lengthy and tedious undertaking.  *Id.*  Literally hundreds of people came forth, all claiming to be heirs entitled to a share in Prince's Estate (the "Estate").  *Id.*  Only a very small few were judged to be legitimate.  Following his death, people lacking ownership interests in Prince's trademarks registered or applied to register marks that belonged to Prince. *Id.*  These individuals never attempted such improper actions during Prince's lifetime. *Id.*  In numerous instances, the Prince Estate took action to reclaim the rights to such trademarks.  *Id.*

Plaintiff applied to register two trademarks during this chaotic period following Prince's death: APOLLONIA and APOLLONIA 6.  McMillan Decl., ¶4, Exs. 1-2.  In performing its duties to the Estate, the Personal Representative appointed to manage the Estate's interests, Comerica Bank and Trust N.A., took steps to secure as much of Prince's intellectual property as possible.  McMillan Decl., ¶ 5.  This included applying to register trademarks owned by Prince and his associated businesses.  *Id.*

The Estate, via its representative, applied to register APOLLONIA 6, which was created, developed, and used by Prince or a Prince-owned entity (Application

6

MEMORANDUM OF POINTS AND AUTHORITIES

Serial No. 881405070).  McMillan Decl., ¶ 9.  The APOLLONIA 6 mark, however, was refused registration on the basis of likelihood of confusion with registrations for APOLLONIA (Registration No. 5626232) and APOLLONIA 6 (Registration No. 5272757), both owned by Plaintiff.  *Id.*

The Estate attempted to overcome the refusal by arguing that there was no likelihood of confusion between its mark and Plaintiff's Registration for APOLLONIA.  *Id.*, ¶ 10 & Ex. 3.  The Estate also filed separate petitions to cancel each of Plaintiff's Registrations – one on July 12, 2019 (for APOLLONIA 6) and one on October 26, 2021 (for APOLLONIA).  AC, Ex. C.  Consistent with the Estate's arguments before the PTO, neither of these petitions alleged a likelihood of confusion between Plaintiff's Registrations and any rights owned by the Estate.  *Id.*  Instead, the petitions were based on arguments pertaining to the validity of the Registrations themselves (*i.e.* the applications underlying the registrations misidentified the owner of the mark, lack of trademark use, and abandonment).  *Id.*

By order of the Probate Court on August 1, 2022, all assets of the Estate were distributed to each of PRINCE LEGACY, LLC and PRINCE OAT HOLDINGS LLC, the members comprising Defendant PPE.  McMillan Decl., ¶ 11.  It was the intent of the Estate to distribute all assets, including all trademarks.  *Id.*  Accordingly, all trademarks owned by the Estate were distributed either to PPE, NPG Music Publishing, LLC, or NPG Records, LLC.  *Id.*  Some were transferred by operation of

7

MEMORANDUM OF POINTS AND AUTHORITIES

law with the transfer or acquisition of the businesses that owned them; others were transferred by written assignment. *Id*. This transfer included the Estate's application for APOLLONIA 6, which was transferred to Defendant PPE. *Id*. Shortly after the transfer, Defendant PPE was substituted for the Estate as Petitioner in the TTAB cancellation proceedings. *Id*.

Following the substitution, PPE immediately began efforts to resolve the dispute between the parties. *Id*., ¶ 12. Between September 2022 and August 2024, the parties repeatedly suspended proceedings before the TTAB to attempt to work out a settlement. *Id*. The parties held numerous calls, usually via counsel and often directly with the parties. *Id*. The parties exchanged several draft settlement agreements. *Id*.

Notwithstanding these efforts, the parties were unable to resolve their differences regarding the trademark registrations. *Id*., ¶ 14. The APOLLONIA 6 case was tried to conclusion and awaiting decision when Plaintiff filed this Action. *Id*. The APOLLONIA case was tried nearly to conclusion (opening trial briefs for both sides were submitted), but it was suspended after the Trademark Office cancelled the subject registration because Plaintiff failed to file the required maintenance documents by the statutory deadline. AC, ¶ 56. Thus, Plaintiff's APOLLONIA registration was cancelled due to her own (or her attorneys') negligence, not due to any act committed by Defendant.

MEMORANDUM OF POINTS AND AUTHORITIES

### B. Plaintiff's Surprise Complaint

Plaintiff filed her initial Complaint on August 19, 2025.  By the time Plaintiff filed this Complaint, Plaintiff's APOLLONIA mark had already been canceled, and the APOLLONIA 6 dispute had been fully tried and awaiting final decision after six years of discovery, settlement discussions, and briefing.  McMillan Decl., ¶ 14 & Exs. 5-6.  The sole count of the Complaint sought declaratory relief that (1) Plaintiff owned rights in connection with APOLLONIA in connection with unspecified goods and services, and (2) Plaintiff had not infringed any valid, enforceable trademark rights of Defendants.  Dkt. No. 1, ¶¶ 49-52.

On September 17, 2025 Defendant moved for dismissal of the Complaint for lack of subject matter jurisdiction.  Dkt. No. 13.  On October 3, 2025 Plaintiff filed a First Amended Complaint.  Dkt. No. 16.  The Amended Complaint contains some additional allegations regarding the potential unjustness of a TTAB ruling (AC, ¶¶ 56-59) and Defendant's alleged motives in bringing the TTAB actions (AC, ¶¶ 5, 7, 61) but provides no additional facts in support of Plaintiff's claim that there is an actual case or controversy.

### C. Plaintiff's Claim under Cal. Civ. Code § 3344

Plaintiff's Amended Complaint contains a second claim: for infringement of Plaintiff's name, image and likeness under California Civil Code § 3344.  The

MEMORANDUM OF POINTS AND AUTHORITIES

relevant facts of the Amended Complaint, which Plaintiff treats as true only for purposes of its motion to dismiss Count 2, are sparse.

Plaintiff alleges that she is an individual. AC, ¶ 12. Plaintiff alleges that she has used the name "Apollonia" to identify herself and her work for more than 40 years." AC, ¶ 36. "In 1984, Plaintiff starred as the character 'Apollonia', Prince's love interest in the pop culture classic *Purple Rain*." AC, ¶ 3. Plaintiff alleges: "'Apollonia' as portrayed in the film *Purple Rain* was the name of a character or performer and did not function as a trademark." AC, ¶ 68(a) (citations omitted).

The Amended Complaint contains only one paragraph that makes anything other than a conclusory allegation of Defendant's violation of Plaintiff's rights. In Paragraph 61, Plaintiff speculates that Defendant's TTAB actions are motivated by an upcoming *Purple Rain* musical. AC, ¶ 61. In the next paragraph, Plaintiff alleges:

On further information and belief, Defendant PPE, without Plaintiff's consent, has entered into at least one agreement regarding the use of APOLLONIA and APOLLONIA 6 in connection with the *Purple Rain* musical wherein Plaintiff's rights of publicity have been violated. Defendants do not have the authority to allow a third party to use Plaintiff's name, image, voice, likeness or other indicia of identity including Plaintiff's likeness from the original film."

10

MEMORANDUM OF POINTS AND AUTHORITIES

AC, ¶ 62. However, Plaintiff provides no example of how her name, image or likeness have been infringed. Instead, she includes a photograph at the end of Paragraph 62 of the actress who will play the Apollonia character in the *Purple Rain* musical:



*Id.* The Amended Complaint does not explain why this image is an infringement of Plaintiff's publicity rights under the California Civil Code § 3344, nor is any infringement apparent from the photograph itself. For the reasons explained in greater detail in Section, III B, below, this is insufficient to state a claim for misappropriation under California Civil Code § 3344.

## II.    ARGUMENT

### A. Plaintiff's Declaratory Relief Claim Should be Dismissed for Lack of Subject Matter Jurisdiction

Count 1 of Plaintiff's claim for relief does not present a justiciable case or controversy because the sole dispute between the parties is about trademark registrability. Plaintiff therefore lacks standing, and the Court lacks subject matter jurisdiction.

### i.    Legal Standard

Defendant seeks dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because there is no justiciable case or controversy for the Court to decide.  A motion to dismiss for lack of subject matter jurisdiction may be facial or factual.  In a facial attack, the movant alleges that the complaint itself lacks allegations sufficient to confer jurisdiction.  In a factual attack, the court may consider evidence beyond the complaint: "[t]he Court, however, may consider evidence beyond the pleadings in reviewing a 12(b)(1) factual attack, such as here." *Purely Driven Products, LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016, 1018 (C.D. Cal. 2016).  Also, the Court is not required to accept Plaintiff's allegations as true.  *See*, *Bobosky v. Adidas AG*, No. CV 10-630-PK, 2010 WL 4853295, @ *2 (D. Oregon, October 8, 2010); *L.A. Triumph, Inc. v. Ciccone*, No. CV 10-06195-SJO (JCx), 2011 WL13217374, @ *2 (C.D. Cal., February 16, 2011).  Under either form attack, "jurisdictional dismissals are warranted where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Bobosky*, 2010 WL 4853295, @ *2), (citations omitted). In this case, Plaintiff's Amended Complaint is both facially and factually insufficient.

### ii.    The Amended Complaint Fails Facially

Plaintiff's claims facially fail because nothing in the Amended Complaint suggests that there is any dispute between the parties other than the two administrative

MEMORANDUM OF POINTS AND AUTHORITIES

proceedings pending before the TTAB.  Merely defending an action at the TTAB, without an actual threat of liability for infringement is not enough to show an actual case or controversy.  *Purely Driven Products*, 171 F. Supp. 3d at 1019.  "Under Ninth Circuit trademark law, to satisfy the actual controversy requirement, the plaintiff must show 'real and reasonable apprehension' *that it would be liable for infringement* if it continued marketing its product."  *Monster Cable Products, Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010-11 (N.D. Cal. 2009) *emphasis added* (quoting *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982)).

Nothing in the Amended Complaint alleges that Plaintiff has ever been threatened with anything other than cancellation of her trademark registrations. Plaintiff devotes a large section of her Amended Complaint to "Defendants' Threatening Aggressive Acts" (AC, ¶¶ 39-64), but the allegations of that section merely repeat that the parties have been in a lengthy dispute before the TTAB regarding trademark registrations.

In Paragraphs 4 through 11 of Amended Complaint, Plaintiff speculate about Defendant's motives in bringing the TTAB proceedings years ago, and what may happen if the TTAB rules against her.  In Paragraph 7, Plaintiff complains that a loss at the TTAB may have a preclusive effect under relevant Supreme Court precedent, but that is true of every decision at the TTAB and is not particularized to Plaintiff.  In Paragraph 9, she alleges that if she loses before the TTAB "it is highly likely Prince's

13

MEMORANDUM OF POINTS AND AUTHORITIES

estate will demand Apollonia cease using her name and, if not, bring a trademark infringement action against her." This is pure speculation about what *might* happen in the future and is not factually supported by any of the allegations of the Amended Complaint. The immediacy of these concerns is also questionable: these matters have been ongoing since July 12, 2019 and Ms. Kotero has not seen fit to bring this action until the eve of the Board's decision.

Having failed to allege anything other than the existence of TTAB proceedings, the Complaint fails facially to allege an actual case or controversy. *See Monster Cable Products,* 642 F. Supp. 2d at 1010-11 (TTAB proceeding alone is insufficient to confer subject matter jurisdiction).

### iii.    The Amended Complaint Fails Factually

The Complaint also fails factually because Defendant has never threatened Plaintiff's use of the Apollonia name, nor has it demanded that Plaintiff cease using it in her business activities. McMillan Decl., ¶ 15. Plaintiff's 30(b)(6) deposition of Mr. McMillan (Managing Member of Prince Legacy, LLC, one of the two members comprising Defendant, Paisley Park Enterprises, LLC) confirms the limitations of the conflict: when asked if Plaintiff had done anything that "offends the estate," Mr. McMillan responded that she had blocked Prince's successor company from registering a mark that Prince created. *Id.,* ¶ 15 & Ex. 7 at 47:24 – 48:25. When

asked if there was anything else she had done, Mr. McMillan testified "I love

Apollonia, so I'm not here to beat up on what she has done."  *Id.*

Through years of litigation and settlement discussions relating to the TTAB

proceedings, Defendant has never threatened Plaintiff, asked her to cease using her

name, nor interfered with her business activities.  McMillan Decl., ¶¶ 15-16.  During

settlement discussions in 2024, Defendant invited Plaintiff to appear and perform at

Paisley Park using her adopted stage name, Apollonia.  *Id.*, ¶ 16.  Settlement

discussions have consistently affirmed Plaintiff's continued use of her stage name.

*Id.*, ¶ 13.

Moreover, throughout their legal dispute, Defendant has consistently argued

that Plaintiff's use of "Apollonia" as her stage name is not trademark use and

therefore does not conflict with Defendant's trademark use of its APOLLONIA 6

mark.  McMillan Decl., ¶13.   Defendant stated this position publicly in the legal

record of its APOLLONIA 6 application by way of its office action response to the

USPTO (AC, ¶ 42), and Defendant maintained this position in both TTAB

proceedings.  Plaintiff's deposition of Mr. McMillan confirms that Defendant does not

seek to prevent Plaintiff from continuing to use Apollonia as her stage name.

She can use her name as her name and make money off of her name, the

Apollonia name but I believe -- I believe the name was given to her by

15

MEMORANDUM OF POINTS AND AUTHORITIES

Prince anyway but he -- he certainly contracted for her to be able to use that name under those limited circumstances.

…

Q.· ·Okay.· What about Apollonia, if she wanted to put out sweat shirts with her name and picture on it that just said Apollonia, is that offensive?· Let me ask it another way. ·Let's say that Apollonia wanted to put a sweat shirt or a T-shirt with her name and image on it, does she need permission from the LLC to do so?

THE WITNESS:· I do not believe so.

BY MR. JOHNSON:· Q.· ·Why?

A.· ·I believe she can use her name.

*Id.*, ¶ 15 & Ex. 7 at McMillan depo. p. 45, 6-10; 50:7-20 (objection omitted).

### iv.    The Court Should Decline to Entertain this Action

The timing of Plaintiff's lawsuit suggests her reason for calling on the federal court is to short circuit the administrative process before the TTAB.  This is improper and the Court should decline to exercise jurisdiction here.  The Declaratory Judgment Act is "deliberately cast in terms of permissive, rather than mandatory authority."

*Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (citation omitted). As Professor McCarthy writes in his treatise:

> [A] registrant whose mark is challenged for cancellation before the Trademark Board, cannot preempt or interrupt and stop the administrative process by filing suit for declaratory judgment in the federal courts solely based on a dispute as to the right to a registration. Where an administrative proceeding is already under way, the courts should not short-circuit the proceeding by litigating a suit for declaratory judgment unless there are independent grounds such as a threat of infringement litigation. As the Second Circuit said: "The Declaratory Judgment Act may not be used simply to remove a controversy from a forum where it properly belongs."

5 McCarthy on Trademarks and Unfair Competition § 32:53 (5th ed.) (quoting *Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 125, (2d Cir. 1963)). Professor McCarthy further writes: "[a]s the Ninth Circuit observed, allowing a case in the T.T.A.B. to create a basis for a declaratory judgment case in court 'would allow litigants to 'file suit in federal court solely for cancellation of a registration,' a result that 'undercut[s] and short-circuit[s] the power of the Trademark Board to consider such cases.'" *Id.* (quoting *San Diego County Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1026 (9th Cir. 2023)). This is precisely what has happened here: Plaintiff fears the result of six years of litigation, during

17

MEMORANDUM OF POINTS AND AUTHORITIES

which she was represented by counsel, and is seeking to short-circuit the TTAB's forthcoming decision.

The Court should not set aside the parties' six years of work before the TTAB. The Court should exercise its discretion to decline to hear this case.

### B. Plaintiff's Claim Under Cal. Civ. Code § 3344 Should Be Dismissed because it Fails to Plausibly Allege Use of Plaintiff's Identity

The Amended Complaint contains only one paragraph in which the Plaintiff alleges any facts regarding Defendant's alleged use of her identity. In it, Plaintiff alleges "on information and belief" that Defendant has entered into agreements with third parties for the use of Plaintiff's name. AC, ¶ 62. The Plaintiff then provides an image of actress Rachel Webb with "Rachel Webb" immediately below her face and the words "Apollonia" and *Purple Rain* in smaller letters further below. This is not use of Plaintiff's identity. Plaintiff provides no factual allegations to explain why she believes a photograph of another woman bearing that woman's name and the character name "Apollonia" with the title of the production in which she appears infringes her right of publicity, nor may any reasonable inference be drawn from the photograph support any plausible theory of liability. Plaintiff has therefore failed to allege facts to plausibly support a claim that Defendant has used her identity and Count 2 should be dismissed.

### III.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must give a defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The complaint must also be 'plausible on its face,' allowing the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Rickley v. County of Los Angeles*, Case No. CV 16-04176-AB (AFMx), 2018 WL 11357527, at *3 (C.D. Cal., February 1, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "Labels, conclusions, and a 'formulaic recitation of the elements of a cause of action will not do.'" *Rickley*, 2018 WL 11357527, at * 3 (quoting *Twombly*, 550 U.S. at 555) ).  Allegations of the complaint are accepted as true for purposes of a Rule 12(b)(6) motion.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, this does not require accepting as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S.  at 678.

California provides claims for both common law misappropriation of likeness, and statutory misappropriation under California Civil Code § 3344.  *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 803 (N.D. Cal. 2011).  "To state a claim for

common law misappropriation, a plaintiff must plead and prove sufficient facts to establish '(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.'" *Fraley*, 830 F. Supp. 2d at 803 (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001)).  A claim under California Civil Code § 3344 requires all four of the elements from the common law claim, plus two more: "(5) 'a knowing use by the Defendant,' and (6) 'a direct connection between the alleged use and the commercial purpose.'" *Fraley*, 830 F. Supp. 2d at 803.

## IV.    Plaintiff has Failed to Plead that Defendant Used Her Identity

The Amended Complaint contains no allegation that Defendant has used Plaintiff's identity.  In Paragraph 61 Plaintiff alleges that there will soon be a musical production of the *Purple Rain* film. AC, ¶ 61.  Then, in Paragraph 62, Plaintiff alleges, on information and belief, that Defendant has "entered into at least one agreement regarding the of APOLLONIA and APOLLONIA 6 in connection with the *Purple Rain* musical wherein Plaintiff's rights of publicity have been violated."  AC, ¶ 62.  This sentence is confusing at best.  The use of the trademarks at issue in the TTAB proceedings "APOLLONIA" and "APOLLONIA 6", along with Plaintiff's capitalization of the entirety of both words suggests that Plaintiff is speculating that Defendant has entered into license agreements for the use of the APOLLONIA and

APOLLONIA 6 trademarks in connection with some unspecified goods or services.  Of course, trademark use and the use of a name for identification purposes are not the same thing.  *See* AC, ¶68(a) ("'Apollonia' as portrayed in the film *Purple Rain* was the name of a character or performer and did not function as a trademark"); *see also In re Polar Music Int'l* AB, 714 F.2d 1567, 1572 (Fed. Cir. 1983) ("just showing the name of the recording group on a record will not by itself enable that name to be registered as a trademark.").

The mere fact that the Plaintiff identifies herself using the name of the role she played in the *Purple Rain* film does not support a plausible theory that Defendant has misappropriated her identity.  In *Newton v. Thomason*, a country singer named Wood Newton sued the producers of the television show *Evening Shade* because the main character, played by Burt Reynolds, was also named Wood Newton.  *Newton v. Thomason*, 22 F.3d 1455, 1458 (9th Cir. 1994).  The only evidence of commercial use of Mr. Newton's name was a newspaper announcement, which mentioned "Wood Newton" as Burt Reynold's character name.  *Id*. at 1459.  The Ninth Circuit held that this was insufficient to show a commercial use of Mr. Newton's name:

> Nonetheless, commercial purpose means more than merely using a person's name as part of a cast of characters in a television program advertisement that highlights the program's general plot.  In this case, Appellees did no more than use the name "Wood Newton" in the text of

newspaper articles announcing Burt Reynold's debut as a character in the TV Series. Nothing indicated that Reynolds's character name was the same as Newton's name or that the fictional character in the TV Series in any way resembled Newton.

*Newton*, 22 F.3d at 1461.

The facts alleged here are nearly identical to the facts warranting summary judgment in *Newton*. Like the newspaper announcements of Burt Reynolds playing the role of Wood Newton, the photograph in Paragraph 62 is merely an announcement that Rachel Webb would play the role of Apollonia in the *Purple Rain* musical. The photograph included at the conclusion of Paragraph 62 does not clarify how Plaintiff believes that Defendant is using her identity. The photograph clearly identifies the actress who will play the role of "Apollonia" as "Rachel Webb" and not "Patty Apollonia Kotero." And the two actresses look nothing alike:

 

AC, ¶¶ 36, 62. The inclusion of *"Purple Rain"* in the photograph shows that the use of "Apollonia" is a reference to the character role and not Plaintiff.

In sum, Plaintiff's only allegation of facts that Defendant used her identity, in Paragraph 62, do not support any plausible theory that Defendant has done anything to violate California Civil Code § 3344.  This claim should be dismissed.

## V.    A Claim that Plaintiff Owns the Character "Apollonia" would be Preempted by the Copyright Act

Given the vagueness of Plaintiff's allegations, it is not clear if Plaintiff believes that that she owns rights of publicity in the *character name* "Apollonia".  Any such claim would be preempted by copyright law.

A claim for a violation of California Civil Code § 3344 is preempted by the Copyright Act when the subject matter of the state law claim falls within the subject matter described by 17 U.S.C. 102 and 103, and the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106.  *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017).  In *Maloney*, two former NCAA basketball players sued a media hosting company that catalogued and sold digital images of plaintiffs for personal use.  Before the case reached the Ninth Circuit, this Court granted Defendant's motion to strike the complaint under California's anti-SLAPP statute on the grounds that plaintiff's claims were preempted by the Copyright Act.  *Id.* at 1008.  The Ninth Circuit affirmed this Court, noting, in part, that prior case law "implies that one's likeness does not form the basis of a publicity-right claim when 'the tort action challenges control of the artistic work itself".  *Id.* at 1014 (quoting *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1142 (9th Cir. 2006)).

23

MEMORANDUM OF POINTS AND AUTHORITIES

Here, there is no question that an effort by Plaintiff to control the use of the Apollonia character name would be an attempt to control the use of the artistic work itself and therefore preempted by the Copyright Act.  Regarding the first element, the film *Purple Rain* is protected under 17 U.S.C. § 102(a)(6), which provides Copyright Act protection for "motion pictures and other audiovisual works."  Regarding the second element, 17 U.S.C. § 106(2) provides the copyright holder the exclusive right "to prepare derivative works based upon the copyrighted work."

The Amended Complaint alleges that Plaintiff's role in *Purple Rain* was a "lead role" in the film.  AC, ¶ 23.  Any claim by Plaintiff that she owns the *character name* "Apollonia" based on state law would be an attempt to control one of the primary elements of the copyrighted work: the name of a lead character.  Thus, to the extent the allegations in Paragraph 62 can be construed to be an allegation that Plaintiff owns the rights to "Apollonia" the *character*, Plaintiff's claim is preempted by the Copyright Act.  Should Plaintiff take this position in her opposition to this motion or in a third amended complaint, Plaintiff intends to bring an anti-SLAPP motion.

## VI.  CONCLUSION

For the reasons enumerated above, Plaintiff's complaint fails to confer on this Court declaratory judgment jurisdiction, both facially and factually.  Plaintiff likewise fails to allege that Defendant has used her name, image, or likeness, let alone violated her rights therein.  Plaintiff's Amended Complaint should be dismissed.

24

MEMORANDUM OF POINTS AND AUTHORITIES

Accordingly, Defendant respectfully requests that this case be dismissed.

DATED: October 13, 2025

/s/ Jeffrey T. Norberg

NEAL & MCDEVITT LLC
Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, Paisley Park Enterprises, LLC, certifies that this memorandum contains 5,692 words, which complies with the word limit of L.R. 11-6.1.

Date: October 13, 2025
By: /s/ Jeffrey T. Norberg